1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CLARENCE EDWARD YOUNG,

11              Petitioner,              No. CIV S-09-CV-2999 MCE CHS P

12        vs.

13   D.K. SISTO,[1]

14              Respondent.          FINDINGS AND RECOMMENDATIONS

15   _____/

16                          **I.  INTRODUCTION**

17              Petitioner, Clarence Edward Young, is a state prisoner proceeding pro se with a

18   petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an

19   indeterminate sentence of twenty-two years to life following his 1987 conviction in Fresno County

20   Superior Court for second degree murder with two penalty enhancements.  Here, Petitioner does not

21   challenge the constitutionality of that conviction, but rather, the execution of his sentence, and

22   specifically, the August 23, 2007 decision by the Board of Parole Hearings finding him unsuitable

23   for parole.

24   _____

25        [1] Gary Swarthout is substituted for his predecessor, D.K. Sisto, as the current acting warden
26   at California State Prison, Solano, where Petitioner is currently incarcerated, pursuant to Fed. R. Civ.
     P. 25(d).

                                        1

**II.  ISSUES PRESENTED**

Petitioner alleges five grounds for relief in his pending petition.  Specifically, Petitioner's claims are as follow:

(1)  His commitment offense does not constitute "some evidence" to support the Board's August 23, 2007 denial of parole.

(2)  Denial of parole based an immutable factors, specifically Petitioner's commitment offense, violated his right to due process of law.

(3)  The Board failed to consider all relevant and reliable information in making its determination that he was unsuitable for Parole.

(4)  Section 2402(c)(1) of the California Code of Regulations is unconstitutionally vague, and therefore void.

(5)  The Board violated the Separation of Powers Doctrine by appropriating to itself absolute power over parole matters.

Since the allegations in Petitioner's first three claims all assert due process violations in relation to the sufficiency of the evidence supporting the Board's decision, they will be addressed together herein as a single issue in section (V)(A), below.  Petitioner's claims four and five are considered separately in sections (V)(B)(1) and (V)(B)(2), respectively.  After careful consideration of the record and applicable law, it is recommended that this petition for writ of habeas corpus relief be denied.

**III. FACTUAL BACKGROUND**

The basic facts of Petitioner's life crime were summarized by the Presiding Commissioner at Petitioner's parole hearing as follows:

> On July 31, 1986 at approximately 4:49 p.m. Fresno County police officers were dispatched to 1425 [North] Ninth Street . . . Upon arrival officers observed a large group of people standing around an orange Dodge two-door coup parked in the northeast corner of the apartment complex.  A serious disturbance had occurred between white and black men armed with guns and baseball bats. People began yelling that a man had been shot in the face and needed a doctor. Located within the vehicle was witness Rosemary Richmond, who was sitting in the front passenger seat holding a male subject on her lap.  The victim was later identified as Vernon Lawrence Witcher

2

. . . The police observed that the victim was unconscious and bleeding badly from the face. The paramedics were called and responded to the scene. They administered first aid and transported the victim to the Fresno Valley Medical Center, where he subsequently died. Dr. C.P. Nelson, pathologist, stated that the cause of death was a bullet hole in the head. The driver of the vehicle that drove into the apartment complex where the incident took place was identified as Clarence Young. The investigation revealed that Young took one step back, then raised his hand directly in the face of victim Vernon Witcher, and fired one shot into his face. The death of Vernon Witcher was a culmination of a racial frackus between a group of white and black persons who had been drinking alcohol in the apartment. Young was said to have been drinking beer and brandy that day by witness Ronny Lewis. Young also was seen leaving the apartment holding a dark blue steel .25 automatic handgun.

. . . .

Young stated that he did not murder Vernon Witcher. Young stated, "It was Ronny Lewis that had shot the victim. Although I deny committing the murder, I do admit to being responsible for the death of the victim." A white male and white female were walking on the street in Fresno, who made disparaging remarks to Young and his friends. Young stopped his vehicle and a physical confrontation occurred with one of his friends and the white male. They drove off and later discovered each other out at an apartment complex. Young stated the white men came in and started beating on the door and challenged Young and his friends to fight. Young stated one of the white men was armed with a bat. He observed the other persons in his group to have guns. He stated the whites would not leave and continued to harass the blacks. Young heard a shot, saw the victim fall, and then ran.

(Parole Hr'g Tr. 11:19-14:12, Aug. 23, 2007, Pet. Ex. A)

Following a jury trial, Petitioner was convicted of second degree murder with penalty enhancements for using a firearm and for a prior felony conviction. He was sentenced to twenty-two years to life in prison. Petitioner's minimum eligible parole date passed on December 21, 2000. On August 23, 2007, Petitioner appeared before the Board of Parole Hearings (the "Board") for his fourth subsequent parole hearing. After considering various positive and negative suitability factors, including the nature of the commitment offense, the panel concluded that Petitioner would pose an unreasonable risk of danger to society if released, and concluded that he was not suitable for parole. Petitioner sought habeas corpus relief in the Fresno County Superior

3

Court.  On September 15, 2008, the court denied his petition, finding that the Board's determination that Petitioner was unsuitable for parole was supported by some evidence.  The California Court of Appeal, Fifth District, and the California Supreme Court denied relief without comment.  Petitioner filed this federal petition for writ of habeas corpus on October 27, 2009.  Respondent filed an answer on January 15, 2010, and Petitioner filed his traverse on February 9, 2010

## IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997).  Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000).  Federal *habeas corpus* relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).  This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## V.  DISCUSSION

A.      **Due Process in the California Parole Context**

1    Petitioner alleges in three related claims that the Board's 2007 decision violated his

2    federal right to due process of law.  First, Petitioner claims that his commitment offense alone does

3    not constitute "some evidence" that he remains a current risk to public safety.  Petitioner's second

4    claim is that the Board impermissibly relied upon his commitment offense, an immutable factor, in

5    finding him unsuitable for parole.  Third, Petitioner claims that the Board did not consider all

6    available relevant and reliable information in making its parole suitability determination, thus failing

7    to afford Petitioner individualized consideration of the specific facts and circumstances surrounding

8    Petitioner's commitment offense and post-conviction history.  Because the allegations in Petitioner's

9    claims all assert due process violations in relation to the sufficiency of evidence supporting the

10   Board's parole decision, they will be addressed together herein as a single issue.

11   The Due Process Clause of the Fourteenth Amendment to the United States

12   Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due

13   process of law."  U.S. CONST. AMEND. XIV, § 2.  A person alleging a due process violation must first

14   demonstrate that he or she was deprived of a protected liberty or property interest, and then show

15   that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Ky. Dep't.*

16   *Of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th

17   Cir. 2002).

18   A protected liberty interest may arise from either the Due Process Clause itself or

19   from state laws.  *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).   In the context of parole,

20   [t]here is no right under the Federal Constitution to be conditionally
     released before the expiration of a valid sentence, and the States are
21   under no duty to offer parole to their prisoners.  [ ].  When, however,
     a State creates a liberty interest, the Due Process Clause requires fair
22   procedures for its vindication – and federal courts will review the
     application of those constitutionally required procedures.

23
     *Swarthout v. Cooke*, slip. op. at 4 (U.S. January 24, 2011).  *See also Greenholtz v. Inmates of Neb.*
24
     *Penal*, 442 U.S. 1, 7 (1979) ("There is "no constitutional or inherent right of a convicted person to
25
     be conditionally released before the expiration of a valid sentence.").  Here, because California's
26

5

statutory scheme governing parole "uses mandatory language, [it] 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, thereby giving rise to a constitutionally protected liberty interest." *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz*, 442 U.S. at 12). *See also Swarthout*, slip op. at 4 ("[T]he Ninth Circuit held that California law creates a liberty interest in parole . . . . While we have no need to review that holding here, it is a reasonable application of our cases." (internal citations omitted)).

Despite the existence of this liberty interest, it is well established that inmates are not guaranteed the "full panoply of rights" during a parole suitability hearing as are normally afforded to criminal defendants under the Due Process Clause. *Swarthout*, slip op. at 4 ("In the context of parole, we have held that the procedures required are minimal."). *See also Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The United States Supreme Court has held that the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in *Greenholtz*, specifically, "an opportunity to be heard and . . . a statement of the reasons why parole was denied." *Id*. at 4-5. *See also Greenholtz*, 442 U.S. at 16.

In addition, as a matter of state constitutional law, denial of parole to California inmates must be supported by "some evidence" demonstrating that the inmate poses an unreasonable risk of danger to society. *Hayward v. Marshall*, 603 F.3d 546, at 562 (citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002)). *See also In re Lawrence*, 44 Cal.4th at 1191 (recognizing the denial of parole must be supported by "some evidence" that an inmate "poses a current risk to public safety"); *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008) (same). However, California's "some evidence" requirement is a substantive right provided by the state of California, and thus is not afforded protection by the federal Due Process Clause. *Swarthout*, slip op. at 5. Indeed, the Supreme Court has held that "[n]o opinion of [theirs] supports converting California's 'some evidence' requirement into a substantive federal requirement." *Id*. Moreover, the Supreme Court has long recognized that alleged violations of state law are not cognizable on federal habeas corpus review. *Id*. at 6; *Estelle*

6

1    *v. McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas

2    court to reexamine state court determinations on state law questions"); *Smith v. Phillips*, 455 U.S.

3    209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions

4    obtained in violation of the United States Constitution.").

5         Here, the record reflects that Petitioner was present at his 2007 parole suitability

6    hearing, that he participated in the hearing, and that he was provided with the reasons for the

7    Board's decision to deny parole.  The federal due process clause requires no more.  Moreover, to

8    the extent that Petitioner's claim rests on his allegation that the Board failed to follow California

9    state law or procedure because its decision is not supported by sufficient evidence, it is not

10   cognizable in a federal petition for writ of habeas corpus. *Middleton v. Cupp*, 768 F.2d 1083, 1085

11   (9th Cir. 1986); (*Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986).  As discussed above,

12   a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some

13   transgression of federal law binding on the state courts.  *Middleton*, 768 F.2d at 1085; *Gutierrez v.*

14   *Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  Petitioner has received all process he was due and is

15   thus not entitled to federal habeas corpus relief on his claim that the Board's unsuitability

16   determination violated his federal right to due process of law.

17   **B.     Petitioner's Fourth and Fifth Remaining Claims**

18        **1.     Section 2402(c)(1) of the California Code of Regulations (Claim Four)**

19        Petitioner claims that the Board construes every indeterminately sentenced inmate's

20   commitment offense as "exceptionally heinous, atrocious, or cruel" under title 15, section 2402(c)(1)

21   of the California Code of Regulations and that none of the five factors listed under the regulation

22   provide a meaningful standard for narrowing the class of persons to which this regulation applies.

23   Accordingly, Petitioner claims that the Board's application of the regulation in his case was arbitrary

24   and capricious, thus rendering the statute unconstitutionally vague.

25        Section 2402(c)(1) sets forth the standards by which the Board determines whether

26   the timing and gravity of the commitment offense was carried out in "an especially heinous,

atrocious or cruel manner" such that the consideration of public safety requires a more lengthy period of incarceration.  Specifically, the regulation sets forth a non-exhaustive list of five factors to be considered, including:

>    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
>    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>
>    (C) The victim was abused, defiled or mutilated during or after the offense.
>
>    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
>    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 CAL. CODE REGS. §2402(c)(1).

Generally, a regulation is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement."  *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989).  *See also Humanitarian Law Project v. Mukasey*, 509 F.3d 1122, 1134 (9th Cir. 2007) ("To survive a vagueness challenge, the statute must be sufficiently clear to put a person of ordinary intelligence on notice that his or her contemplated conduct is unlawful."); *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998) (A statue must be sufficiently clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited.).  "[A] party challenging the facial validity of [a law] on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications."  *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (internal quotations omitted).  Moreover, "[t]he Due Process Clause does not require the same precision in the drafting of parole release statues as is required in the drafting of penal laws."  *Hess v. Bd. of Parole and Post-Prison Supervision*, 514 F.3d 909, 914 (9th Cir. 2008) (citing *Glauner v. Miller*, 184 F.3d 1053,

1  1055 (9th Cir. 1999)).  The statue need only make a "principled distinction" between those who are

2  suitable for parole and those who are not.  *Id.*

3              Petitioner's claim that section 2402 is void for vagueness is without merit.  As noted

4  above, the Board must take into consideration all of the factors set forth in section 2402(c)(1) in

5  determining whether a commitment offense was "especially heinous, atrocious or cruel" such that

6  it remains indicative of a prisoner's current risk of danger to society.  The Board cannot merely

7  characterize a murder as heinous and deny parole.  Indeed, several other district courts in this circuit

8  have recognized that "because these sub-factors [in section 2402(c)(1)] are set forth in simple plain

9  words, such that a reasonable person of ordinary intelligence would understand their meaning and

10  the conduct they proscribe, the notice requirement is satisfied."  *Edwards v. Curry*, 2009 WL

11  1883739 at *9 (N.D.Cal. 2009) (citing *Hogue*, 752 U.S. at 1504); *see also Wagoner v. Sisto*, 2009

12  WL 2712051 at *6 (C.D.Cal. 2009) (stating that "the five sub-factors outlined in § 2402(c)(1)(A)-(E)

13  serve to limit the 'heinous, atrocious or cruel' language of section 2402(c) and narrow the class of

14  inmates that are found unsuitable for parole...thus, the terms are not unconstitutionally vague.").

15  Because the term "especially heinous, atrocious, or cruel" is further limited by these five detailed

16  factors, it is not unconstitutionally vague.  *See Arave v. Creech*, 507 U.S. 463, 470-78 (1993) (Idaho

17  death penalty statute which cited as an aggravating factor that the crimes were carried out in "utter

18  disregard for human life" was not impermissible vague because limiting construction had been

19  adopted defining this factor as demonstrating "the utmost disregard for human life, i.e. the cold-

20  blooded pitiless slayer").

21              In addition, the sections of the California Code of Regulations governing parole

22  determinations have not been found to be unduly vague or overbroad under federal law.  Nor has

23  federal law been found to preclude the use of terms such as "especially cruel" or "callous as

24  guidelines in parole suitability evaluations.  *Cf. Maynard v. Cartwright*, 486 U.S. 356, 363-64

25  (1988) (in a capital case, the "especially heinous, atrocious or cruel" aggravating circumstance was

26  unconstitutionally vague because it did not offer sufficient guidance to the jury in deciding whether

to impose the death penalty); *Tuilaepa v. California*, 512 U.S. 967, 972 (1994) (noting that statutory

aggravating circumstances in capital cases "may not be unconstitutionally vague").  Accordingly,

Petitioner is not entitled to federal *habeas corpus* relief on this claim[2]

### 2.     Separation of Powers Doctrine (Claim Five)

Petitioner's fifth and final claim is that the Board has violated the separation of

powers doctrine by failing to comply with section 3041 of the California Penal Code, thus

"usurp[ing] the legislative function and appropriat[ing] to itself absolute power over lifer inmates."

(Pet. at 39.)  It is unclear, however, whether Petitioner is claiming that the Board has violated the

separation of powers doctrine under the federal or state constitution.  Regardless, Petitioner's claim

must fail.  A claim that the Board violated the federal constitution is not cognizable because the

federal doctrine of separation of powers does not extend to the states under the Fourteenth

Amendment.  *See Hughes v. Superior Court*, 339 U.S. 460, 467 (1950) ("[T]he Fourteenth

Amendment leaves the States free to distribute the powers of government as they will between their

---

[2] Petitioner has also requested that the court take judicial notice of four state court cases pending in Santa Clara County, including Criscione (no. 71614), Jameison (no. 71194), Bragg (no. 108543) and Ngo (no. 127611).  On August 30, 2007, the Santa Clara County Superior Court issued five substantially identical orders in those four cases as well as an additional case, *In re Lewis* (no. 68038).  The only differences in the five orders "were in the case captions and in footnote 1, in which the superior court took judicial notice of, and referenced by name, the other four proceedings."  *In re Lewis*, 172 Cal. App.4th 13, 17 n.2 (2009).  Petitioner contends that these orders establish that in "well over 90% of the cases that appeared in front of the Board, the panel had found the commitment offense to be 'especially heinous, atrocious or cruel' as set fort in Title 15 § 2402 (c) (1).  In the remaining 10% of the cases either parole had been granted, or it was unclear whether § 2402 (c) (1) was the reason for parole denial."  (Pet. at 36).

The decision of the Santa Clara County Superior Court has now been reversed on appeal. *In re Lewis*, 172 Cal.App.4th 13.  Moreover, even if the decision had not been reversed, it could not control the results of Petitioner's case.  A federal court may take judicial notice adjudicative facts "concerning the immediate parties–who did what, when, how and with what motive or intent–...."  Advisory committee notes to FED. R. EVID. 201(a).  Petitioner's request for judicial notice does not pertain to the immediate parties.  A federal court may also take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  The statistics determined in the superior court are not "generally known" or "capable of accurate and ready determination."  *Id*.  Petitioner's request for judicial notice must be denied.

1  legislative and judicial branches.").  Thus, Petitioner cannot claim that the federal separation of

2  powers doctrine applies to the Board's actions as the Board is a state agency.  A claim that the Board

3  violated the separation of powers doctrine contained in the California state constitution does not give

4  rise to a claim for federal *habeas corpus* relief.  *See Middleton v Cupp*, 768 F.2d 1083, 1085 (9th

5  Cir. 1985).  Petitioner is thus not entitled to federal *habeas corpus* relief on this claim.

6                                          **VI.  CONCLUSION**

7           IT IS RECOMMENDED that Petitioner's petition for writ of *habeas corpus* be

8  denied.  These findings and recommendations are submitted to the United States District Judge

9  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

10  after being served with these findings and recommendations, any party may file written objections

11  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

12  to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served

13  and filed within seven days after service of the objections.  Failure to file objections within the

14  specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d

15  449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects

16  to file petitioner may address whether a certificate of appealability should issue in the event he elects

17  to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254

18  Cases (the district court must issue or deny a certificate of appealability when it enters a final order

19  adverse to the applicant).

20  DATED: February 4, 2011

21

22                                          CHARLENE H. SORRENTINO
                                           UNITED STATES MAGISTRATE JUDGE

23

24

25

26

                                                11